Charles A. Loreto, J.
Motion to confirm the arbitration award and to enter judgment thereon.
The award finds (1) that Joseph Berlin and Company, Inc., is the successor to Gindoff Textile Corporation under the agreement with the union; (2) directs both corporations pay certain sums of money to two employees and reinstate to their former positions two employees; and (3) directs that these employees refund severance pay received by them upon compliance with the award.
The union contract which provides for arbitration is with the Gindoff corporation only, which was liquidated. The parties subject to arbitration may apply to the Supreme Court to confirm the award or to vacate it pursuant to the provisions of the Civil Practice Act (§ 1462). The statute specifies and limits the grounds for vacating the award. These statutory grounds are exclusive and a motion to vacate cannot be made upon any other ground.
It was within the competence of the arbitrator to make the finding and award that he has made against the Gindoff corporation.
However, with respect to the Berlin corporation, a real difficulty is presented. The arbitrator with considerable trepidation declares this corporation to be the successor of the Gindoff *259 corporation and states that it should he required to assume or to “ have thrust upon it ” the obligations of the former under its agreement with the union.
The learned and astute arbitrator recognizes the difficulty in holding that the Berlin corporation is the legal successor to the Gindoff corporation. He frankly admits <c It is apparent that the instant case is not quite as open and shut”, as Matter of Minkoff (H. & L. Dress Co.) (10 Misc 2d 828 [1958]) cited by him. He is not concerned with the legal question of how to enforce the award, for he adds <! the ingenuity of counsel and the equitable powers of our courts should be equal to the task of finding some way to enforce the award and protecting the workers involved.”
Perhaps with realization that the award against the defunct company may be an empty one, he is straining his wit to convert this hollow victory into one of substance. This he attempts to accomplish by assuming jurisdiction over one not a party to the arbitration contract, not joined in the arbitration proceeding, nor brought in before the court on this very application.
Significantly, an attempt heretofore made to add the Berlin corporation to the arbitration proceeding was denied by the Federal court. When the union applied to the United States District Court for the Southern District of New York to require that it be made a party to the arbitration, Judge McGohby wrote “ The undisputed facts here are that Berlin has never entered into an agreement to arbitrate disputes between it and the union; and Berlin has not consented to become a party to the pending arbitration between the union and Gindoff ”. That decision might well be interpreted to be a bar or res judicata to any new effort to bring it into the arbitration proceeding even indirectly as would be the consequence of a confirmation of the award against it.
If this were the case of the runaway employer, the pursuit of his alter ego or his agent or corporate instrumentality for carrying on his business under another name subject to his domination and control, there would be no obstacle because a fortiori the latter party in the eyes of the law is deemed to be the former. There is no need to cite court decisions sustaining the award in such instances.
Here, however, the Gindoffs were the financial supporters of the Gindoff corporation and the arbitrator reports that he is “ convinced that the withdrawal of the Gindoffs was Iona fide ”. They are not officers, directors, stockholders or employees of the Berlin corporation; nor is there a scintilla of evidence that they have any interest in it or control over it. The arbitrator *260 states that Joseph Berlin was “ the brains ” behind the Gindoff corporation. He is the president of the Berlin corporation and a minority stockholder, owning 28% of its stock. Whatever the arbitrator meant by using the term “ the brains ” of the Gindoff corporation is not explained. He might have been its manager. In any event, he did not possess financial control. From such a connection of Joseph Berlin with the former corporation and his minority stockholding in the Berlin corporation, can it reasonably be held that the latter corporation is the agent or the corporate instrumentality for carrying on the business of the defunct corporation. To so find and hold would do great violence to corporate law. The inviolability of corporate entity would be shattered. Of course, there are instances where the corporate entity may be pierced to impose liability or liability imposed where one corporation is truly the subsidiary of another and may be so held. There is no such measure of connection between the two corporations or stockholding or financial domination in the case at bar which would reasonably justify holding that the Berlin corporation is the legal successor of the other corporation, required in law to assume the obligations of the latter.
Matter of Reif (Williams Sportswear) (9 N Y 2d 387) cited by petitioner is distinguishable. There the stock of the new corporation was entirely owned by the two individuals who, as partners, had entered into the union contract.
The basic elements of due process, too, would be ignored if the Berlin corporation were held answerable, not having been made a party to the arbitration proceeding.
The equivocal prayer for relief, wherein specifically judgment is requested against the Gindoff corporation and no such specific request is made against the Berlin corporation, although it is requested generally that the award be confirmed in all respects, leaves room to suspect that the union doubts the validity of the award against the latter corporation.
Reverting to a consideration of the arbitrator’s award insofar as it relates to the Gindoff corporation, having found that the Gindoffs withdrew their financial support from it, which was the principal support, it is not clear whether the corporate liquidation was an inevitable consequence of such financial withdrawal. It should be added that the corporation had an absolute right to terminate the union contract by “liquidation or dissolution ” or “by the sale thereof to another ”. Upon dissolution, severance pay was given to employees with the union’s approval. Therefore, it should be ascertained whether the corporation could have continued in existence when the Gindoffs *261 chose to withdraw their financial support. For if its liquidation was in good faith the inevitable consequence of Gindoff’s withdrawal, the court fails to see any rational basis for a holding against that corporation.
Accordingly, the motion to confirm is denied to the extent herein indicated and the matter remitted for clarification as to issue stated, the court reserving the determination of the open question until receipt of the report thereon.